**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
------------------------------ x
JOHN ALAN SAKON,               :
                               :
        Plaintiff,             :
                               :
v.                             :
                               :
JOHN JOHNSON, F PERRONE, BRUCE :
D. SKEHAN, PETER BRANDER, NEAL :
CAVANAUGH, MICHAEL ROBERTS,    :
PETER J. CELIO, WILMARY LABONTE, :  Civil No. 3:23-cv-107 (AWT)
DANIELLE STONE-MITCHELL,       :
CHRISTOPHER FERREIRA, FRANCELIA :
MARIE SEVIN, DENNIS O'TOOLE,   :
SETH CONANT, FREED MARCROFT LLC, :
TOWN OF GLASTONBURY, TOWN OF   :
MANCHESTER, and STATE OF       :
CONNECTICUT,                   :
                               :
        Defendants.            :
------------------------------ x
```

**RULING ON MOTION TO DISMISS**

Defendants Town of Manchester, Peter J. Celio, Wilmary LaBonte and Danielle Stone-Mitchell (collectively the "Manchester Defendants") have moved to dismiss all claims against them. For the reasons set forth below, their motion to dismiss being granted.

## I. Background

The plaintiff, John Alan Sakon, filed this action on January 26, 2023, proceeding pro se and naming seventeen defendants. The nineteen-count complaint concerns a number of separate events, including the plaintiff being arrested by members of the

-1-

Manchester Police Department on March 20, 2017; April 17, 2017; and sometime in June 2017.

Count 5 is a claim for false arrest, malicious prosecution, and false imprisonment brought against Danielle Stone-Mitchell ("Stone-Mitchell"), the Manchester Police Department, and others. It is based on an arrest on March 20, 2017. The criminal case arising from that arrest was nolled on January 3, 2019.

Count 6 is a claim for false arrest, malicious prosecution, and false imprisonment brought against Peter Celio ("Celio"), the Manchester Police Department, and others. It is based on an arrest on April 17, 2017. The plaintiff spent two days in custody following his arrest, and the case was nolled on January 16, 2019.

Count 7 is a claim for false arrest, malicious prosecution, and false imprisonment brought against Wilmary LaBonte ("LaBonte"), the Manchester Police Department, and others. It is based on an arrest that took place at some point during June 2017. The plaintiff spent four months in custody following his arrest, and the case was nolled on January 3, 2019.

Count 10 is a claim for false imprisonment/assault and battery. Count 14 is a claim for intentional infliction of emotional distress. Count 15 is a claim for negligent infliction of emotional distress. Each of these claims is against all of the defendants, but none identifies acts by these defendants

other than acts identified in prior counts.

Count 16 is a personal injury claim against the Manchester Police Department, and Count 17 is a claim pursuant to the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq., against the Manchester Police Department.

Count 18 is a claim for libel, slander, and defamation of character. It makes specific reference to an act by defendant Francelia Marie Sevin on August 10, 2016, but makes no reference to these defendants. It simply refers to "actions of all the defendants." (ECF No. 1-1 at 24).

Count 19 claims a 42 U.S.C. § 1983 civil rights violation as to which the "plaintiff cites the complaints found in paragraphs 1-18 hereto" and "claims a deprivation of his rights, privileges, immunities secured by the Constitution which were violated by state and local officials under the color of law." (ECF No. 1-1 at 25).

## II. **Legal Standard**

When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Although a complaint "does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (citations and internal quotations omitted). However, the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the [claimant] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

"The function of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" Mytych v. May Dep't Store Co., 34 F. Supp. 2d 130, 131 (D. Conn. 1999) (quoting Ryder Energy Distribution v. Merrill Lynch

Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984)). The issue on a motion to dismiss "is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims." United States v. Yale New Haven Hosp., 727 F. Supp. 784, 786 (D. Conn. 1990) (citing Scheuer, 416 U.S. at 232).

In its review of a motion to dismiss for failure to state a claim, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993).

"Where, as here, the complaint was filed pro se, it must be construed liberally 'to raise the strongest arguments [it] suggest[s].'" Walker v. Schult, 717 F.3d 119, 124 (2d Cir. 2013) (quoting Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006). "Nonetheless, a pro se complaint must state a plausible claim for relief," Walker, 717 F.3d at 124 (citing Harris v. Mills, 572 F.3d 66, 73 (2d Cir. 2009)), and the defendants have filed a Notice to Self-Represented Litigant Concerning Motion to Dismiss as required by Local Rule 12(a). Consistent with the liberal reading of a pro se plaintiff's complaint, "[a] district court deciding a motion to dismiss may consider factual allegations made by a pro se party in his papers opposing the

motion." <u>Walker</u>, 717 F.3d at 122 n.1.

## III. <u>Discussion</u>

The Manchester Defendants contend that the claims against the Manchester Police Department should be dismissed because it is not an entity subject to suit. They further contend that all of the claims against the Manchester Defendants should be dismissed as time-barred. The court agrees.

### A.  **Manchester Police Department**

Counts 16 and 17 are brought against the Manchester Police Department only. The Manchester Police Department is a municipal police department and thus is not a separate legal entity under Connecticut law with the capacity to be sued under 42 U.S.C. § 1983. See <u>Rose v. City of Waterbury</u>, No. 3:12-cv-291 (VLB), 2013 WL 1187049, at *9 (D. Conn. Mar. 21, 2013) (noting "Courts in Connecticut have held that the 'Connecticut General Statutes contain no provision establishing municipal departments, including police departments, as legal entities separate and apart from the municipality they serve, or providing that they have the capacity to sue or be sued . . . Rather, pursuant to Connecticut enabling legislation, it is the municipality itself which possesses the capacity to sue and be sued.'" (citation omitted)); <u>Petaway v. City of New Haven Police Dep't</u>, 541 F. Supp. 2d 504, 510 (D. Conn. 2008) ("[A] municipal police department is not subject to suit under section 1983 because it

is not an independent legal entity."); <u>Nicholson v. Lenczewski</u>, 356 F. Supp. 2d 157, 164 (D. Conn. 2005) ("A municipal police department ... is not a municipality nor a 'person' within the meaning of section 1983.").

Therefore, these counts must be dismissed.

**B. Executive Orders 7G and 10A**

During the COVID-19 pandemic, Governor Ned Lamont issued Executive Orders 7G and 10A, which effectively extended the statutes of limitations in the State of Connecticut. Pursuant to those executive orders, the statutes of limitations in Connecticut were tolled between March 19, 2020 and March 1, 2021. <u>See, e.g.</u>, <u>Taylor v. Pillai</u>, No. 3:21-cv-623 (SALM), 2022 WL 4080525, at *4-*6 (D. Conn. Sept. 6, 2022) (interpreting and applying these executive orders). Thus, the applicable statutes of limitations were extended for 347 days.

Therefore, in determining when the applicable statute of limitations ran with respect to a claim at issue here, the court uses a date that is 347 days after the date on which the statute of limitations would otherwise have run, unless it ran prior to March 19, 2020.

**C. Counts 5, 6 and 7: Statute of Limitations**

**1. False Arrest and False Imprisonment**

The statute of limitations for false arrest and false imprisonment claims is three years. <u>See</u> Conn. Gen. Stat. § 52-

577; <u>Rivera v. Double A. Transp., Inc.</u>, 248 Conn. 21, 32 (1999) (false imprisonment is "an intentional tort governed by § 52-577"); <u>Green v. Donroe</u>, 186 Conn. 265, 267 (1982) ("False imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of another."); see also <u>Outlaw v. City of Meriden</u>, 43 Conn. App. 387, 392 (1996) ("Although the plaintiff pleaded a count alleging false arrest and a count sounding in false imprisonment, the applicable law for these two causes of action is identical.").

"[A] plaintiff's false arrest claim begins accruing at the time of arrest, or at the time the plaintiff was otherwise held pursuant to legal process, and [courts in this District] do not take into consideration the ultimate disposition of the criminal case." <u>Harvey v. Town of Greenwich</u>, No. 3:17-cv-1417 (SRU), 2019 WL 1440385, at *7 (D. Conn. Mar. 31, 2019) (citing <u>Nowacki v. Town of New Canaan</u>, No. 3:16-cv-407 (JAM), 2017 WL 1158239, at *7 (D. Conn. Mar. 28, 2017); <u>Spencer v. Connecticut</u>, 560 F. Supp. 2d 153, 161 (D. Conn. 2008); <u>Vilchel v. Connecticut</u>, No. 3:07-cv-1344 (JCH), 2008 WL 5226369, at *2 (D. Conn. Dec. 11, 2008); <u>Collin v. Connecticut Judicial Branch</u>, No. 3:16-cv-1390 (SRU), 2016 WL 6304434, at *2 n.1 (D. Conn. Oct. 26, 2016)).

The arrests here occurred on March 20, 2017 (Count 5); on April 17, 2017 (Count 6); and in June of 2017 (Count 7). "False arrest and false imprisonment overlap; the former is a species

of the latter." <u>Wallace v. Kato</u>, 549 U.S. 384, 388 (2007). "The sort of unlawful detention remediable by the tort of false imprisonment is detention <u>without legal process</u> . . . ." <u>Id.</u> at 389.

> Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held <u>pursuant to such process</u>—when, for example, he is bound over by a magistrate or arraigned on charges. . . . Thereafter, unlawful detention forms part of the damages for the entirely distinct tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by <u>wrongful institution</u> of legal process.

<u>Id.</u> at 389-90 (citations omitted) (internal quotations omitted).

The complaint does not distinguish between the dates on which the plaintiff was arrested and the dates on which he was otherwise held pursuant to legal process, but there is no indication that the difference between these dates is material. Thus, the court uses the dates of the arrests.

The latest in time of the three arrests is the one on which Count 7 is based. It occurred in June 2017. The three-year statute of limitations ordinarily would have run on June 30, 2020 at the latest. As the statute of limitations was extended by 347 days because of Executive Orders 7G and 10A, the statute of limitations ran no later than June 12, 2021. Thus, these claims are time-barred.

## 2. Malicious Prosecution

"When the question before a federal court is at what point a malicious prosecution claim accrued, 'favorable termination' is analyzed under federal common law, because the timing of accrual is a question of federal law." Spak v. Phillips, 857 F.3d 458, 462-63 (2d Cir. 2017) (citing Wallace, 549 U.S. at 388). "When, by contrast, a federal court is analyzing the substantive merits of a plaintiff's claim, the definition of 'favorable termination' is analyzed under state law." Id. at 463 (citing Singleton v. City of New York, 632 F.2d 185, 193 (2d Cir. 1980)). "[A]s a general matter a nolle prosequi constitutes a 'favorable termination' for the purpose of determining when a Section 1983 claim accrues."[1] Id.

The charges against the plaintiff that are the basis for Count 5 were nolled on January 3, 2019. The charges against the plaintiff that are the basis for Count 6 were nolled on January 16, 2019. The charges against the plaintiff that are the basis for Count 7 were nolled on January 3, 2019.

---

[1] "To be sure, courts and common law authorities state that a nolle does not constitute a favorable termination when it is entered for reasons that are 'not indicative of the defendant's innocence.' [Washington v. Summerville, 127 F.3d 552, 557 (7th Cir. 1997)]. However, this qualifier is defined narrowly. It generally only includes nolles that are caused by the defendant—either by his fleeing the jurisdiction to make himself unavailable for trial or delaying a trial by means of fraud. It also includes any nolle entered in exchange for consideration offered by the defendant (e.g., cooperation). See generally RESTATEMENT (SECOND) OF TORTS § 660 (AM. LAW INST. 1977)." Spak, 857 F.3d at 464.

The latest of the three nolles is the one on which Count 6 is based. It occurred on January 16, 2019. The three-year statute of limitations ordinarily would have run on January 16, 2022, but it was extended by 347 days because of Executive Orders 7G and 10A. Thus, the statute of limitations ran on December 29, 2022.

The plaintiff contends, with respect to each of these three counts, that there was not a favorable termination of the case until it was "formally dismissed" thirteen months after the nolle pursuant to Connecticut General Statutes § 54-142a.

Pursuant to Connecticut General Statutes § 54-142a(c)(1):

> Whenever any charge in a criminal case has been nolled in the Superior Court, or in the Court of Common Pleas, if at least thirteen months have elapsed since such nolle, all police and court records and records of the state's or prosecuting attorney or the prosecuting grand juror pertaining to such charge shall be erased . . . .

Conn. Gen. Stat. § 54-142a(c)(1). The plaintiff's contention that his claim did not accrue upon entry of the nolle but rather thirteen months later when the records were erased pursuant to § 54-142a was rejected in Spak v. Phillips. There the court held that "Spak's contention that his claim accrued not upon entry of the nolle, but thirteen months later when records of the charges against him were automatically erased pursuant to Connecticut state law, see Conn. Gen. Stat. § 54-142a(c)(1), is meritless." 857 F.3d at 466. "Connecticut courts have made clear that the

erasure provision Spak cites is a purely administrative measure, [State v. Winer, 286 Conn. 666, 679-80 (2008)] (holding that 'the recording of nolles and later, the erasure of criminal records,' are 'administrative rather than substantive in intent')." Id.

The plaintiff argues that Spak v. Phillips is no longer good law because of the enactment of Connecticut General Statutes § 52-577f. However, the analysis in Spak is based on the fact that Connecticut courts have determined that the erasure provision in § 54-142a(c)(1) is a purely administrative matter, and nothing in § 52-577f undermines that holding by the Connecticut Supreme Court in Winer. Rather, prior to the enactment of § 52-577f, pursuant to Connecticut General Statutes § 52-577 the statute of limitations accrued on the date of the act or omission complained of, and that date arguably was the date on which the malicious prosecution commenced. But at that point, a plaintiff could not have satisfied the requirement that there had been a favorable termination. The new provision, § 52-577f, makes it clear that the date of accrual of the cause of action is the date on which there has been a favorable termination, i.e., in a case like this, when a charge is nolled. The fact that the pertinent provision in the Connecticut Practice Book was not changed after the enactment of § 52-577f is consistent with this conclusion. Section 39-31 still provides that "[t]he entry of a

nolle prosequi terminates the prosecution and the defendant shall be released from custody." Conn. Practice Book § 39-31.

Thus, these claims are time-barred.

**D.  Remaining Claims against the Manchester Defendants**

With respect to Count 10, the statute of limitations for false imprisonment and assault and battery is three years. See Conn. Gen. Stat. § 52-577; Rivera, 248 Conn. at 32 (concerning false imprisonment); Lambert v. Stovell, 205 Conn. 1, 4 (1987) (noting "assault and battery" are "governed by § 52-577"). With respect to Count 14, the statute of limitations for a claim for intentional infliction of emotional distress is three years. See Conn. Gen. Stat. § 52-577; Watts v. Chittenden, 301 Conn. 575, 596-98 (2011) (§ 52-577 applies to intentional infliction of emotional distress claims). With respect to Count 15, the statute of limitations with respect to a claim for negligent infliction of emotional distress is two years. See Conn. Gen. Stat. § 52-584;[2] Rivera, 248 Conn. at 31 (noting that negligent infliction of emotional distress claims fall properly under § 52-584). With respect to Count 19, the statute of limitations for a Section 1983 claim is three years. See Conn. Gen. Stat. § 52-577; Walker v. Jastremski, 430 F.3d 560, 562 (2d Cir. 2005) (statute of limitations for 42 U.S.C. § 1983 claim based in

---

[2] Based on the allegations in the complaint, the three-year statute of repose is not implicated here.

Connecticut relies on § 52-577); see also Lounsbury v. Jeffries, 25 F.3d 131, 133 (2d Cir. 1994) ("Since Congress did not enact a statute of limitations governing actions brought under § 1983, the courts must borrow a state statute of limitations").

As noted above, none of these counts identifies actions by any of the Manchester Defendants other than actions attributed to them in Counts 5, 6, and 7. Thus, a three-year statute of limitations with respect to each of these claims would have ordinarily run by January 16, 2022 but was extended by virtue of Executive Orders 7G and 10A to December 29, 2022 at the latest, and the two-year statute of limitations would have run sooner.

With respect to Count 18, the statute of limitations for a claim for libel, slander or defamation is two years. See Conn. Gen. Stat. § 52-597; Doe #2 v. Rackliffe, 337 Conn. 627, 634 n.9 (2020) ("Other examples [of specialized statutes of limitations] include the statutes governing actions for defamation; see General Statutes § 52-597 ('[n]o action for libel or slander shall be brought but within two years from the date of the act complained of') . . ."). The only act alleged to have constituted libel, slander or defamation of character is alleged to have occurred on August 10, 2016, so the two-year statute of limitations ran by August 10, 2018, as Executive Orders 7G and 10A do not apply.

Thus, all of these claims are time-barred.

**E.  Continuing Course of Conduct; Bankruptcy; and Equitable Tolling**

The plaintiff argues that the running of the statute of limitations was tolled by Connecticut's continuing course of conduct doctrine. In Khan v. Yale University, 85 F.4th 86 (2d Cir. 2023), the court explained:

> Connecticut law pertaining to the continuing course of conduct doctrine . . . states that[] "[w]hen the wrong sued upon consists of a continuing course of conduct," the relevant statute of limitations or repose "does not begin to run until that course of conduct is completed." Flannery v. Singer Asset Fin. Co., [312 Conn. 286, 311] (2014) (internal quotation marks omitted). The doctrine is "generally applicable under circumstances where it may be impossible to pinpoint the exact date of a [tortious] act or omission that caused injury or where the [tort] consists of a series of acts or omissions and it is [therefore] appropriate to allow the course of action to terminate before allowing the repose section of the limitation period to run." Essex Ins. Co. v. William Kramer & Assocs., LLC, [331 Conn. 493, 503] (2019) (brackets and internal quotation marks omitted); see also Martinelli v. Fusi, [290 Conn. 347, 356] (2009) (stating that "continuing course of conduct doctrine reflects the policy that, during an ongoing relationship, lawsuits are premature because specific tortious acts or omissions may be difficult to identify and may yet be remedied"). To invoke the doctrine, a plaintiff must allege that the defendant, "(1) committed an initial wrong upon the plaintiff; (2) owed a continuing duty to the plaintiff that was related to the alleged original wrong; and (3) continually breached that duty." [Flannery, 312 Conn. at 313] (internal quotation marks omitted). To demonstrate that the defendant owed the plaintiff a continuing duty, the plaintiff may plead "either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act." [Essex, 331 Conn. at 504], (emphases in original) (internal quotation marks omitted).

Id. at 100.

In Zielinksi v. Kotsoris, 279 Conn. 312 (2006), the
Connecticut Supreme Court held that "separate and isolated
contacts with different physicians who have the same employer .
. . will not, without more, give rise to a continuing course of
conduct . . . for purposes of tolling the statute of
limitations" because such contacts are insufficient to
demonstrate the special relationship that the doctrine requires.
See id. at 328-30. Instead, such contacts constituted "separate
and discrete acts." Id. at 330.

The plaintiff's claims with respect to the Manchester
Defendants rely exclusively on alleged conduct by them in 2017.
Nowhere in the complaint does the plaintiff allege facts showing
that any of the Manchester Defendants took any action after that
time. Nor does the complaint allege facts that could show that
any of the Manchester Defendants owed the plaintiff a continuing
duty under the continuing course of conduct doctrine. See
Zielinski, 279 Conn. at 328-30 ("separate and isolated contacts
with different [employees] who have the same employer"
insufficient to give rise to continuing course of conduct);
Macellaio v. Newington Police Dep't, 145 Conn. App. 426, 436
(2013) (plaintiff-arrestee "neither pleaded nor produced any
evidence of a special relationship" between himself and police
defendants).

Thus, there are no factual allegations in the complaint that support applying the continuing course of conduct doctrine to any of the claims against the Manchester Defendants.

The plaintiff alleges that he "fil[ed] for Bankruptcy protection on September 19th, 2019." (ECF No. 1-1 at 8). He contends that his claims are timely pursuant to 11 U.S.C. § 108, which provides in pertinent part that

> (a) If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of—
>
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>
> (2) two years after the order for relief.

11 U.S.C. § 108.

The plaintiff maintains that the applicable order for relief entered on June 8, 2020, when the Bankruptcy Court granted a motion by defendant Town of Glastonbury to convert his case from a Chapter 11 to a Chapter 7 bankruptcy. The plaintiff states that a trustee was appointed following this order. He states that thereafter the Bankruptcy Court found that the trustee had abandoned certain claims to the plaintiff pursuant to an order dated August 1, 2021.

The plaintiff filed his voluntary petition on September 19, 2019. Under 11 U.S.C. § 301(b), "[t]he commencement of a voluntary case under a chapter of this title constitutes an order for relief under such chapter." Thus, the initial order for relief entered on September 19, 2019. Title 11 U.S.C. § 348(a)[3]

> establishes the general rule that, in a converted case, the dates of the filing, the commencement of the case and the order for relief remain unchanged by the conversion, except as expressly provided in subsections (b) and (c). As to "the order for relief," subsections 348(b) and 348(c) enumerate specific exceptions to the general rule, setting out those sections where in a converted case the date of the conversion shall serve as the date of the "order for relief under this chapter."

In re Bell, 225 F.3d 203, 213 (2d Cir. 2000). The plaintiff does not allege facts that could show that any exception to the

---

[3] This subsection, and the two relevant subsections following it, provide:

**(a)** Conversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted, but, except as provided in subsections (b) and (c) of this section, does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief.

**(b)** Unless the court for cause orders otherwise, in sections 701(a), 727(a)(10), 727(b), 1102(a), 1110(a)(1), 1121(b), 1121(c), 1141(d)(4), 1201(a), 1221, 1228(a), 1301(a), and 1305(a) of this title, "the order for relief under this chapter" in a chapter to which a case has been converted under section 706, 1112, 1208, or 1307 of this title means the conversion of such case to such chapter.

**(c)** Sections 342 and 365(d) of this title apply in a case that has been converted under section 706, 1112, 1208, or 1307 of this title, as if the conversion order were the order for relief.

-18-

general rule in 11 U.S.C. §§ 348(a) is applicable here. <u>See</u> 11 U.S.C. §§ 348(a)-(c); <u>id.</u> at 213. Accordingly, the plaintiff had until September 19, 2021, i.e., two years from the date of the September 19, 2019 order of relief under 11 U.S.C. § 108, to commence this action. <u>See</u> 11 U.S.C. §§ 108, 301(b). Even when 347 days is added pursuant to Executive Orders 7G and 10A, the statute of limitations ran on September 1, 2022. The plaintiff did not file the complaint until January 2023.

Nor is equitable tolling warranted here. Courts "have applied equitable tolling only in 'rare and exceptional circumstances,' where [they] found that 'extraordinary circumstances' prevented a party from timely performing a required act, and that the party 'acted with reasonable diligence throughout the period he [sought] to toll.'" <u>Walker</u>, 430 F.3d at 564 (quoting <u>Doe v. Menefee</u>, 391 F.3d 147, 159 (2d Cir. 2004)). The plaintiff asserts that he had "nine hospital admissions in 2022" that negatively impacted his ability to file his claims. (ECF No. 74 at 18-21). However, the plaintiff was afforded an extra 347 days as a result of the tolling of the time between March 19, 2020 and March 1, 2021 pursuant to Executive Orders 7G and 10A. He has not made a showing that further tolling is warranted here, where the operative events occurred in March, April and June of 2017 and January of 2019.

## IV. <u>Conclusion</u>

For the reasons set forth above, the Rule 12(b)(6) Motion to Dismiss (ECF No. 42) filed by defendants Town of Manchester, Peter Celio, Wilmary Labonte and Danielle Stone-Mitchell is hereby GRANTED. The claims against these defendants are dismissed with prejudice.

It is so ordered.

Dated this 19th day of March 2024, at Hartford, Connecticut.


                              /s/AWT
                         Alvin W. Thompson
                United States District Judge