**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
------------------------------- x
JOHN ALAN SAKON,                 :
                                 :
          Plaintiff,             :
                                 :
v.                               :
                                 :
JOHN JOHNSON, F PERRONE, BRUCE   :
D. SKEHAN, PETER BRANDER, NEAL   :
CAVANAUGH, MICHAEL ROBERTS,      :
PETER J. CELIO, WILMARY LABONTE, :  Civil No. 3:23-cv-107 (AWT)
DANIELLE STONE-MITCHELL,         :
CHRISTOPHER FERREIRA, FRANCELIA  :
MARIE SEVIN, DENNIS O'TOOLE,     :
SETH CONANT, FREED MARCROFT LLC, :
TOWN OF GLASTONBURY, TOWN OF     :
MANCHESTER, and STATE OF         :
CONNECTICUT,                     :
                                 :
          Defendants.            :
------------------------------- x
```

## RULING ON MOTION TO DISMISS

Defendants John Johnson, F. Perrone, Bruce D. Skehan, Peter Brander, Neal Cavanaugh, Michael Roberts, and the Town of Glastonbury (collectively the "Glastonbury Defendants") have moved to dismiss all claims against them. For the reasons set forth below, their motion to dismiss is being granted.

## I. Background

The plaintiff, John Alan Sakon, filed this action on January 26, 2023, proceeding pro se and naming seventeen defendants. The nineteen-count complaint concerns a number of separate events, including the plaintiff being arrested by officers of the

Glastonbury Police Department twice in August 2016; on September 22, 2016; in June 2018; and on October 22, 2018.

Count 1 is a claim for false arrest, malicious prosecution, and false imprisonment brought against John Johnson ("Johnson") and F. Perrone ("Perrone"), who are both officers in the Glastonbury Police Department; the Glastonbury Police Department; and others. It is based on an arrest on August 10, 2016. The criminal case arising from that arrest was nolled on January 3, 2019.

Count 2 is a claim for false arrest, malicious prosecution, and false imprisonment brought against Bruce Skehan ("Skehan"), who is an officer in the Glastonbury Police Department; the Glastonbury Police Department; and others. It is based on an arrest on nine felony charges in August 2016. "Before trial, the State entered a nolle prosequi on the 9th felony charge . . . ." (ECF No. 1-1 at 10). "On November 5, 2018, a jury, in a record 18 minutes, found the defendant Sakon innocent of the remaining eight felony counts." Id.

Count 4 is a claim for false arrest, malicious prosecution, and false imprisonment brought against Peter Brander ("Brander"), who is an officer in the Glastonbury Police Department; the Glastonbury Police Department; and the Town of Glastonbury. It is based on an arrest on September 22, 2016. The criminal case arising from that arrest was nolled in December

2018.

Count 8 is a claim for false arrest, malicious prosecution, and false imprisonment brought against Neal Cavanaugh ("Cavanaugh"), who is an officer in the Glastonbury Police Department; and the Glastonbury Police Department. It is based on an arrest in June 2018. The criminal case arising from that arrest was nolled on January 3, 2019.

Count 9 is a claim for false arrest, malicious prosecution, and false imprisonment brought against Brander; the Glastonbury Police Department; and the Town of Glastonbury. It is based on an arrest on October 22, 2018. The criminal case arising from that arrest was nolled on July 8, 2020.

Count 10 is a claim for false imprisonment/assault and battery. Count 14 is a claim for intentional infliction of emotional distress. Count 15 is a claim for negligent infliction of emotional distress. Each of these claims is against all of the defendants, but none identifies acts by these defendants other than acts identified in prior counts.

Count 13 is an antitrust claim against the Town of Glastonbury for damages under the Sherman Anti-Trust Act, 15 U.S.C. §§ 1 et seq.; the Connecticut Antitrust Act, Conn. Gen. Stat. §§ 35-24 et seq.; and the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a et seq., ("CUTPA"). The plaintiff alleges that the Town of Glastonbury arrested him

-3-

"multiple times" in order to "prevent the development and refinancing of plaintiff's development and to derail the developments of Sakon" and thereby "favor development in the Redevelopment District," "complete its inverse condemnation of the subject properties owned by Sakon," and "create a monopoly of grocery sales in the local community so as to benefit the local insiders and Stop & Shop." (ECF No. 1-1 at 23-24).

Count 18 is a claim for libel, slander, and defamation of character. It makes specific reference to an act by defendant Francelia Marie Sevin on August 10, 2016, but makes no reference to these defendants. It simply refers to "actions of all the defendants." (ECF No. 1-1 at 24).

Count 19 claims a 42 U.S.C. § 1983 civil rights violation as to which the "plaintiff cites the complaints found in paragraphs 1-18 hereto" and "claims a deprivation of his rights, privileges, immunities secured by the Constitution which were violated by state and local officials under the color of law." (ECF No. 1-1 at 25).

## II.  **Legal Standard**

When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Although a complaint "does not need detailed factual

-4-

allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (citations and internal quotations omitted). However, the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the [claimant] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

"The function of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'"

<u>Mytych v. May Dep't Store Co.</u>, 34 F. Supp. 2d 130, 131 (D. Conn. 1999) (quoting <u>Ryder Energy Distribution v. Merrill Lynch Commodities, Inc.</u>, 748 F.2d 774, 779 (2d Cir. 1984)). The issue on a motion to dismiss "is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims." <u>United States v. Yale New Haven Hosp.</u>, 727 F. Supp. 784, 786 (D. Conn. 1990) (citing <u>Scheuer</u>, 416 U.S. at 232).

In its review of a motion to dismiss for failure to state a claim, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." <u>Samuels v. Air Transp. Local 504</u>, 992 F.2d 12, 15 (2d Cir. 1993).

"[I]n some cases, a document not expressly incorporated by reference in the complaint is nevertheless 'integral' to the complaint and, accordingly, a fair object of consideration on a motion to dismiss. A document is integral to the complaint 'where the complaint relies heavily upon its terms and effect.'" <u>Goel v. Bunge, Ltd.</u>, 820 F.3d 554, 559 (2d Cir. 2016) (quoting <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir. 2002)).

"Where, as here, the complaint was filed <u>pro se</u>, it must be construed liberally 'to raise the strongest arguments [it]

-6-

suggest[s].'" Walker v. Schult, 717 F.3d 119, 124 (2d Cir. 2013) (quoting Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006). "Nonetheless, a pro se complaint must state a plausible claim for relief," Walker, 717 F.3d at 124 (citing Harris v. Mills, 572 F.3d 66, 73 (2d Cir. 2009)), and the defendants have filed a Notice to Self-Represented Litigant Concerning Motion to Dismiss as required by Local Rule 12(a). Consistent with the liberal reading of a pro se plaintiff's complaint, "[a] district court deciding a motion to dismiss may consider factual allegations made by a pro se party in his papers opposing the motion." Walker, 717 F.3d at 122 n.1.

## III. Discussion

The Glastonbury Defendants contend that the claims against the Glastonbury Police Department should be dismissed because it is not an entity subject to suit. They further contend that almost all of the plaintiff's claims against the Glastonbury Defendants should be dismissed as time-barred, and those that are not time-barred should be dismissed for failure to state a claim upon which relief can be granted.

### A. Glastonbury Police Department

Counts 1, 2, 4, 8 and 9 are brought against, among other defendants, the Glastonbury Police Department. The Glastonbury Police Department is a municipal police department and thus is not a legal entity with the legal capacity to be sued under 42

U.S.C. § 1983. <u>See</u> <u>Rose v. City of Waterbury</u>, No. 3:12-cv-291
(VLB), 2013 WL 1187049, at *9 (D. Conn. Mar. 21, 2013) (noting
"Courts in Connecticut have held that the 'Connecticut General
Statutes contain no provision establishing municipal
departments, including police departments, as legal entities
separate and apart from the municipality they serve, or
providing that they have the capacity to sue or be sued . . .
Rather, pursuant to Connecticut enabling legislation, it is the
municipality itself which possesses the capacity to sue and be
sued.'" (citation omitted)); <u>Petaway v. City of New Haven Police
Dep't</u>, 541 F. Supp. 2d 504, 510 (D. Conn. 2008) ("[A] municipal
police department is not subject to suit under section 1983
because it is not an independent legal entity."); <u>Nicholson v.
Lenczewski</u>, 356 F. Supp. 2d 157, 164 (D. Conn. 2005) ("A
municipal police department . . . is not a municipality nor a
'person' within the meaning of section 1983.").

 Therefore, all claims against the Glastonbury Police
Department must be dismissed.

 **B. Defendants Roberts and Perrone**

 As to defendant Michael Roberts ("Roberts"), his name is
included in the caption of the complaint but the complaint does
not allege any involvement by Roberts in any conduct that is the
basis for any of the plaintiff's claims in this case. Rather,
Count 8 merely contains a reference to a personal injury

lawsuit, <u>Sakon v. Roberts</u>, HHD-CV20-6130471-S (Conn. Super. Ct. 2020), the plaintiff filed against Roberts, the Town of Glastonbury, and Cavanaugh, in Connecticut Superior Court. "'It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" <u>Brandon v. Kinter</u>, 938 F.3d 21, 36 (2d Cir. 2019) (quoting <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994)) (internal quotations omitted). "'Where a defendant is listed in the caption but the body of the complaint fails to indicate what the defendant did to the plaintiff, dismissal is appropriate.'" <u>Hardaway v. City of Hartford</u>, Civ. No. 3:16-cv-00115, 2016 WL 10951271, at *3 (D. Conn. July 5, 2016) (Merriam, M.J.), recommended ruling affirmed, adopted, and ratified July 21, 2016, (quoting <u>Napierkowski v. Fischer</u>, No. 9:09-CV-0601 (GTS) (GHL), 2009 WL 3165837, at *1 (N.D.N.Y. Sept. 29, 2009)).

As to defendant Perrone, he died on August 29, 2021, and his counsel filed notice of his death on February 15, 2023. Federal Rule of Civil Procedure 25 provides:

> If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.

Fed. R. Civ. P. 25(a)(1). Here, the 90-day period under Rule 25(a)(1) ended on May 16, 2023. The plaintiff did not file a motion for substitution by that date; nor did he file one after that date.

Although courts have "long accorded pro se litigants 'special solicitude' to protect them from 'inadvertent forfeiture of important rights because of their lack of legal training,' . . . solicitude for pro se litigants does not require [the court] to excuse failure to comply with understandable procedural rules and mandatory deadlines." Kotler v. Jubert, 986 F.3d 147, 156 (2d Cir. 2021) (quoting Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 475 (2d Cir. 2006) (internal citations omitted); see also, e.g., Chace v. Machado, No. 3:08-cv-774 (CSH), 2009 WL 3416422, at *1 (D. Conn. Oct. 22, 2009) ("While parties proceeding pro se are due a certain degree of latitude, particularly with regard to complex or obscure matters, that does not extend to permitting their failure to comply with the requirements of the Federal Rules of Civil Procedure . . . with respect to matters such as deadlines."). Here, the Suggestion of Death (ECF No. 18) made specific reference to Rule 25(a), thereby directing the plaintiff's attention to that rule. Under such circumstances, the plaintiff was not dealing with a complex or obscure matter; he was dealing with an understandable procedural rule to which his attention had been directed.

Therefore, this case is dismissed as to defendants Roberts
and Perrone.

**C. Antitrust Claim (Count 13)**

Count 13 is an antitrust claim against the Town of
Glastonbury only. The plaintiff alleges that the Town of
Glastonbury acted "to prevent the development and refinancing of
plaintiff's development and to derail the developments of Sakon
so as to create a monopoly of grocery sales in the local
community so as to benefit the local insiders and Stop & Shop."
(ECF No. 1-1 at 22). "Plaintiff claims damages under the Sherman
Act, the Connecticut Anti-trust Act and the Unfair Trade
Practices Act against the town of Glastonbury." Id.

The plaintiff made an identical claim in a case he filed
before filing this action. In John Alan Sakon v. Town of
Glastonbury, et al., 3:23-cv-53-AWT, which was filed on January
13, 2023, the plaintiff alleges in Claim VI that defendants
created and financed a campaign "to derail the developments of
Sakon so as to create a monopoly of grocery sales in the local
community so as to benefit the local insiders and Stop & Shop."
3:23-cv-53-AWT, ECF No. 1 at 11.  "Plaintiff claims damages
under the Sherman Act, the Connecticut Anti-trust Act and the
Unfair Trade Practices Act." Id.

Under the prior pending action doctrine, "'[w]here there are
two competing lawsuits, the first suit should have priority,

-11-

absent the showing of balance of convenience . . . or . . .
special circumstances giving priority to the second.'" Adam v.
Jacobs, 950 F.2d 89, (2d Cir. 1991) (internal quotations
omitted) (quoting First City Nat'l Bank and Trust Co. v.
Simmons, 878 F.2d 76, 79 (2d Cir. 1989)). "Deference to the
first filing 'embodies considerations of judicial administration
and conservation of resources.'" Adam, 878 F.2d at 89 (quoting
Simmons, 878 F.2d at 79). "Balancing factors of convenience is
essentially an equitable task." Simmons, 878 F.2d at 80 (quoting
Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co., 342 U.S. 180,
183-84 (1952)).

    Here, the balance of convenience weighs in favor of
dismissing this claim, but without prejudice to the plaintiff
pursuing it in the first-filed case. A number of the plaintiff's
other claims in that case also relate to the Town of
Glastonbury's alleged antitrust violations, for example, the
claim under the Racketeer Influenced and Corrupt Organizations
Act. See 3:23-cv-53-AWT, ECF No. 1 at 11. In the instant action,
the relationships between the plaintiff's antitrust claim and
the other claims in the complaint range from nonexistent to
attenuated. Thus, it would be more efficient for the parties and
for the court if the plaintiff's antitrust claim is litigated in
the first-filed case. In addition, the plaintiff has been
instructed to file an amended complaint in the first-filed case,

which will give him the opportunity to do a better job of pleading his antitrust claim. See 3:23-cv-53-AWT, Order Requiring the Plaintiff to Provide Greater Specificity in the Complaint, ECF No. 78.

Therefore, the antitrust claim is dismissed without prejudice to the plaintiff pursuing it in the first-filed case.

**D. Executive Orders 7G and 10A**

During the COVID-19 pandemic, Governor Ned Lamont issued Executive Orders 7G and 10A, which effectively extended the statutes of limitations in the State of Connecticut. Pursuant to those executive orders, the statutes of limitations in Connecticut were tolled between March 19, 2020 and March 1, 2021. See, e.g., Taylor v. Pillai, No. 3:21-cv-623 (SALM), 2022 WL 4080525, at *4-*6 (D. Conn. Sept. 6, 2022) (interpreting and applying these executive orders). Thus, the applicable statutes of limitations were extended for 347 days for all claims filed before March 19, 2020.

Therefore, in determining when the applicable statute of limitations ran with respect to a claim at issue here, the court uses a date that is 347 days after the date on which the statute of limitations would otherwise have run, unless it ran prior to March 19, 2020.

### E. Statute of Limitations

#### 1. False Arrest and False Imprisonment (Counts 1, 2, 4, 8 and 9

The statute of limitations for false arrest and false imprisonment claims is three years. See Conn. Gen. Stat. § 52–577; Rivera v. Double A. Transp., Inc., 248 Conn. 21, 32 (1999) (false imprisonment is "an intentional tort governed by § 52–577"); Green v. Donroe, 186 Conn. 265, 267 (1982) ("False imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of another."); see also Outlaw v. City of Meriden, 43 Conn. App. 387, 392 (1996) ("Although the plaintiff pleaded a count alleging false arrest and a count sounding in false imprisonment, the applicable law for these two causes of action is identical.").

"[A] plaintiff's false arrest claim begins accruing at the time of arrest, or at the time the plaintiff was otherwise held pursuant to legal process, and [courts in this District] do not take into consideration the ultimate disposition of the criminal case." Harvey v. Town of Greenwich, No. 3:17-cv-1417 (SRU), 2019 WL 1440385, at *7 (D. Conn. Mar. 31, 2019) (citing Nowacki v. Town of New Canaan, No. 3:16-cv-407 (JAM), 2017 WL 1158239, at *7 (D. Conn. Mar. 28, 2017); Spencer v. Connecticut, 560 F. Supp. 2d 153, 161 (D. Conn. 2008); Vilchel v. Connecticut, No. 3:07-cv-1344 (JCH), 2008 WL 5226369, at *2 (D. Conn. Dec. 11,

2008); <u>Collin v. Connecticut Judicial Branch</u>, No. 3:16-cv-1390 (SRU), 2016 WL 6304434, at *2 n.1 (D. Conn. Oct. 26, 2016)).

The arrests here occurred on August 10, 2016 (Count 1); in August 2016 (Count 2); on September 22, 2016 (Count 4); in June 2018 (Count 8); and on October 22, 2018 (Count 9). "False arrest and false imprisonment overlap; the former is a species of the latter." <u>Wallace v. Kato</u>, 549 U.S. 384, 388 (2007). "The sort of unlawful detention remediable by the tort of false imprisonment is detention <u>without legal process</u> . . . ." <u>Id.</u> at 389.

> Reflective of the fact that false imprisonment
> consists of detention without legal process, a false
> imprisonment ends once the victim becomes held
> <u>pursuant to such process</u>—when, for example, he is
> bound over by a magistrate or arraigned on charges. .
> . . Thereafter, unlawful detention forms part of the
> damages for the entirely distinct tort of malicious
> prosecution, which remedies detention accompanied,
> not by absence of legal process, but by <u>wrongful</u>
> <u>institution</u> of legal process.

<u>Id.</u> at 389-90 (citations omitted) (internal quotations omitted).

The complaint does not distinguish between the dates on which the plaintiff was arrested and the dates on which he was otherwise held pursuant to legal process, but there is no indication that the difference between these dates is material. Thus, the court uses the dates of the arrests.

The latest in time of these arrests is the one on which Count 9 is based. It occurred on October 22, 2018. The three-year statute of limitations ordinarily would have run on October 22,

2021. As the statute of limitations was extended by 347 days because of Executive Orders 7G and 10A, the statute of limitations for these claims ran by October 4, 2022. Thus, these claims are time-barred.

### 2. Malicious Prosecution (Counts 1, 2, 4 and 8)

"When the question before a federal court is at what point a malicious prosecution claim accrued, 'favorable termination' is analyzed under federal common law, because the timing of accrual is a question of federal law." Spak v. Phillips, 857 F.3d 458, 462-63 (2d Cir. 2017) (citing Wallace, 549 U.S. at 388). "When, by contrast, a federal court is analyzing the substantive merits of a plaintiff's claim, the definition of 'favorable termination' is analyzed under state law." Id. at 463 (citing Singleton v. City of New York, 632 F.2d 185, 193 (2d Cir. 1980)). "In the malicious prosecution context . . . to be deemed a favorable termination, the prosecution's 'final disposition [must be] such as to indicate the accused is not guilty.'" Ashley v. City of New York, 992 F.3d 128, 140 (2d Cir. 2021) (quoting Singleton, 632 F.2d at 193). Thus, a verdict of not guilty satisfies the favorable termination requirement. See Janetka v. Dabe, 892 F.2d 187, 189-90 (2d Cir. 1989). "[A]s a general matter a nolle prosequi constitutes a 'favorable

-16-

termination' for the purpose of determining when a Section 1983 claim accrues."[1] Id.

The charges against the plaintiff that are the basis for Count 1 were nolled on January 3, 2019. There was a favorable termination, by no later than November 5, 2018, with respect to the charges against the plaintiff that are the basis for Count 2 as a result of the combination of a nolle and an acquittal. The charges against the plaintiff that are the basis for Count 4 were nolled in December 2018. The charges against the plaintiff that are the basis for Count 8 were nolled on January 3, 2019.

The latest of these four favorable terminations is the one related to Count 8, and it occurred on January 3, 2019. The three-year statute of limitations ordinarily would have run on January 3, 2022, but it was extended by 347 days because of Executive Orders 7G and 10A. Thus, the statute of limitations ran with respect to all of these claims by no later than December 16, 2022.

---

[1] "To be sure, courts and common law authorities state that a nolle does not constitute a favorable termination when it is entered for reasons that are 'not indicative of the defendant's innocence.' [Washington v. Summerville, 127 F.3d 552, 557 (7th Cir. 1997)]. However, this qualifier is defined narrowly. It generally only includes nolles that are caused by the defendant—either by his fleeing the jurisdiction to make himself unavailable for trial or delaying a trial by means of fraud. It also includes any nolle entered in exchange for consideration offered by the defendant (e.g., cooperation). See generally RESTATEMENT (SECOND) OF TORTS § 660 (AM. LAW INST. 1977)." Spak, 857 F.3d at 464.

The plaintiff contends, with respect to each of these four counts, that there was not a favorable termination until the case was "formally dismissed" thirteen months after the nolle pursuant to Connecticut General Statutes § 54-142a.

Pursuant to Connecticut General Statutes § 54-142a(c)(1):

> Whenever any charge in a criminal case has been nolled in the Superior Court, or in the Court of Common Pleas, if at least thirteen months have elapsed since such nolle, all police and court records and records of the state's or prosecuting attorney or the prosecuting grand juror pertaining to such charge shall be erased . . . .

Conn. Gen. Stat. § 54-142a(c)(1). The plaintiff's contention that his claim did not accrue upon entry of the nolle but rather thirteen months later when the records were erased pursuant to § 54-142a was rejected in Spak v. Phillips. There the court held that "Spak's contention that his claim accrued not upon entry of the nolle, but thirteen months later when records of the charges against him were automatically erased pursuant to Connecticut state law, see Conn. Gen. Stat. § 54-142a(c)(1), is meritless." 857 F.3d at 466. "Connecticut courts have made clear that the erasure provision Spak cites is a purely administrative measure, [State v. Winer, 286 Conn. 666, 679-80 (2008)] (holding that 'the recording of nolles and later, the erasure of criminal records,' are 'administrative rather than substantive in intent')." Id.

The plaintiff argues that Spak v. Phillips is no longer good law because of the enactment of Connecticut General Statutes § 52-577f. However, the analysis in Spak is based on the fact that Connecticut courts have determined that the erasure provision in § 54-142a(c)(1) is a purely administrative matter, and nothing in § 52-577f undermines that holding by the Connecticut Supreme Court in Winer. Rather, prior to the enactment of § 52-577f, pursuant to Connecticut General Statutes § 52-577 the statute of limitations accrued on the date of the act or omission complained of, and that date arguably was the date on which the malicious prosecution commenced. But at that point, a plaintiff could not have satisfied the requirement that there had been a favorable termination. The new provision, § 52-577f, makes it clear that the date of accrual of the cause of action is the date on which there has been a favorable termination, i.e., in a case like this, when a charge is nolled. The fact that the pertinent provision in the Connecticut Practice Book was not changed after the enactment of § 52-577f is consistent with this conclusion. Section 39-31 still provides that "[t]he entry of a nolle prosequi terminates the prosecution and the defendant shall be released from custody." Conn. Practice Book § 39-31.

Thus, these claims are time-barred.[2]

---

[2] With respect to the malicious prosecution claim in Count 9 the charges against the plaintiff that are the basis for this claim were nolled on July 8, 2020. The three-year statute of limitations ordinarily would have run on

### 3. Claims in Counts 10, 13, 14, 15, 18 and 19

With respect to Count 10, the statute of limitations for false imprisonment and assault and battery is three years. See Conn. Gen. Stat. § 52-577; Rivera, 248 Conn. at 32 (concerning false imprisonment); Lambert v. Stovell, 205 Conn. 1, 4 (1987) (noting "assault and battery" are "governed by § 52-577"). With respect to Count 14, the statute of limitations for a claim for intentional infliction of emotional distress is three years. See Conn. Gen. Stat. § 52-577; Watts v. Chittenden, 301 Conn. 575, 596-98 (2011) (§ 52-577 applies to intentional infliction of emotional distress claims). With respect to Count 15, the statute of limitations with respect to a claim for negligent infliction of emotional distress is two years. See Conn. Gen. Stat. § 52-584;[3] Rivera, 248 Conn. at 31 (noting that negligent infliction of emotional distress claims fall properly under § 52-584). With respect to Count 19, the statute of limitations for a Section 1983 claim is three years. See Conn. Gen. Stat. § 52-577; Walker v. Jastremski, 430 F.3d 560, 562 (2d Cir. 2005) (statute of limitations for 42 U.S.C. § 1983 claim based in Connecticut relies on § 52-577); see also Lounsbury v. Jeffries, 25 F.3d 131, 133 (2d Cir. 1994) ("Since Congress did not enact a

---

July 8, 2023, after this case was filed, but was extended because of Executive Orders and 7G and 10A.

[3] Based on the allegations in the complaint, the three-year statute of repose is not implicated here.

statute of limitations governing actions brought under § 1983, the courts must borrow a state statute of limitations").

As noted above, none of Counts 10, 14, 15 or 19 identifies actions by any of the Glastonbury Defendants other than actions attributed to them in Counts 1, 2, 4, 8, and 9. The latest in time of the arrests on which these counts are based is the one on which Count 9 is based. That arrest occurred on October 22, 2018. The three-year statute of limitations for that claim ordinarily would have run on October 22, 2021. As the statute of limitations was extended by 347 days because of Executive Orders 7G and 10A, the statute of limitations ran on October 4, 2022. The two-year statute of limitations for the plaintiff's negligent infliction of emotional distress claim against these defendants would have run earlier. Thus, these claims are time-barred.

With respect to Count 18, the statute of limitations for a claim for libel, slander or defamation is two years. See Conn. Gen. Stat. § 52-597; Doe #2 v. Rackliffe, 337 Conn. 627, 634 n.9 (2020) ("Other examples [of specialized statutes of limitations] include the statutes governing actions for defamation; see General Statutes § 52-597 ('[n]o action for libel or slander shall be brought but within two years from the date of the act complained of') . . ."). The only act alleged to have constituted libel, slander or defamation of character is alleged

-21-

to have occurred on August 10, 2016, so the two-year statute of limitations ran by August 10, 2018, as Executive Orders 7G and 10A do not apply.

**F. Failure to State a Claim: Malicious Prosecution (Count 9)**

The malicious prosecution claim is brought against Brander and the Town of Glastonbury, in addition to the Glastonbury Police Department.

The plaintiff alleges that "with encouragement from the Glastonbury Police Department, on 10/22/2018, Sakonchick filed [a] criminal complaint against John Sakon for embezzling money from the tenancy in common." (ECF No. 1-1 at 20). "By his own admission, James Sakonchick did so 'as a <u>card to play</u>' in defense of the civil lawsuits between the parties." <u>Id.</u> "James Sakonchick then, in recorded conversation, offers to 'withdraw the charges', if John Sakon agreed to withdraw the civil actions" that he had brought against Sakonchik in Connecticut Superior Court. <u>Id.</u>

"Plaintiff alleges Officer Brander with malice sought to pursue a political agenda on behalf of the town of Glastonbury by filing yet another false larceny charge in the inverse condemnation of . . . Sakon's commercial lands to prevent the plaintiff's refinancing of his properties." <u>Id.</u> "Officer Brander relied, almost exclusively, on the prior larceny complaint filed by Linda Sakon for $32,026.66, in his Arrest Warrant Affidavit."

Id. The plaintiff alleges that had Brander conducted a proper
investigation, he would have learned a number of facts that
would have made it apparent that the plaintiff should not be
arrested. "Officer Brander clearly exercised prejudice,
negligence, incompetence, slackness and unfairly prosecuted the
felony larceny arrest to advance the town of Glastonbury's
agenda to inversely claim Sakon's commercial lands by destroying
the reputation of Sakon to do business." Id. at 21. "On July 8,
2020, the state noted a conviction on the charge was unlikely
and the court entered a nolle prosequi." Id.

"'In order to prevail on a § 1983 claim against a state
actor for malicious prosecution, a plaintiff must show a
violation of his rights under the Fourth Amendment, and
establish the elements of a malicious prosecution claim under
state law.'" Roberts v. Babkiewicz, 582 F.3d 418, 420 (2d Cir.
2009) (quoting Fulton v. Robinson, 289 F.3d 188, 195 (2d Cir.
2002)). In Connecticut, "'[a]n action for malicious prosecution
against a private person requires a plaintiff to prove that: (1)
the defendant initiated or procured the institution of criminal
proceedings against the plaintiff; (2) the criminal proceedings
have terminated in favor of the plaintiff; (3) the defendant
acted without probable cause; and (4) the defendant acted with
malice, primarily for a purpose other than bringing an offender
to justice.'" Bhatia v. Debek, 287 Conn. 397, 404 (2008)

-23-

(quoting <u>McHale v. W.B.S. Corp.</u>, 187 Conn. 444, 447 (1982)).

Under Connecticut law,

> "[p]robable cause has been defined as the knowledge
> of facts sufficient to justify a reasonable [person]
> in the belief that he has reasonable grounds for
> prosecuting an action . . . . Mere conjecture or
> suspicion is insufficient . . . . Moreover, belief
> alone, no matter how sincere it may be, is not
> enough, since it must be based on circumstances which
> make it reasonable . . . . Although want of probable
> cause is negative in character, the burden is upon
> the plaintiff to prove affirmatively, by
> circumstances or otherwise, that the defendant had no
> reasonable ground for instituting the criminal
> proceeding."

<u>Bhatia</u>, 287 Conn. at 397 (some modification in original)
(quoting <u>Zenik v. O'Brien</u>, 137 Conn. 592, 597 (1951)). The
"'probable cause determination is, simply, an analysis of
probabilities,'" and it is "'not a technical [determination],
but is informed by the factual and practical considerations of
everyday life on which reasonable and prudent [persons], not
legal technicians, act.'" <u>State v. Brown</u>, 279 Conn. 493, 523
(2006) (some modification in original) (quoting <u>State v. Eady</u>,
249 Conn. 431, 440 (1999)).

The plaintiff has failed to allege facts that could show
that Brander acted without probable cause. The complaint alleges
that Brander arrested the plaintiff on a charge of larceny in
the first degree based on a criminal complaint by Saconchik
claiming that Sakon had embezzled money. The complaint further
alleges that Brander relied on a prior larceny complaint filed

by Linda Sakon. These allegations establish that Brander had
knowledge of facts sufficient to justify a reasonable person in
the belief that the plaintiff had committed a crime. The
plaintiff alleges that Brander did not contact him as part of
the investigation and alleges further that had Brander conducted
a proper investigation, he would have learned a number of facts
that would have made it apparent that the plaintiff had not
committed an offense.

In <u>DeLaurentis v. City of New Haven</u>, the court stated:

> One may not rely without further investigation on
> representations of another where the information
> received is such as to put an ordinarily prudent and
> cautious person on inquiry, or, it has been held,
> where he has no personal knowledge of the truth of
> the representations. So, also, there is authority to
> the effect that to proceed without inquiry would be
> to act without probable cause where the information
> is readily obtainable, or where the accused himself
> points out sources of information that would
> establish his innocence.

220 Conn. 225, 258 (1991) (emphasis added) (internal citations
omitted).

Here, the plaintiff claims that Brander could have learned
information tending to exonerate the plaintiff, but the
complaint contains no factual allegations showing that Brander
received information that would have "put an ordinarily prudent
and cautious person on inquiry." <u>Id.</u>

In addition, the plaintiff has failed to allege facts that
could show that Brander acted with malice, or with a purpose

-25-

other than bringing a suspected offender to justice. There are no factual allegations in the complaint that suggest a connection between Brander and any political agenda of the Town of Glastonbury or an inverse condemnation of Sakon's commercial lands. The plaintiff simply asserts there is one. A complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). Thus, vague, conclusory assertions concerning Brander's mental state are not sufficient to state a claim. "We accept as true factual allegations but not conclusions, such as statements concerning a defendant's state of mind." Nat'l Rifle Ass'n of Am. v. Vullo, 49 F.4th 700, 713 (2d Cir. 2022) (citing Iqbal 556 U.S. at 681). See also Whiteside v. Hover-Davis, Inc., 995 F.3d 315, 321 (2d Cir. 2021) ("a court should not accept as true allegations that amount to mere 'legal conclusions,' . . . including those concerning a defendant's state of mind . . ." (quoting Iqbal, 556 U.S. at 678) (internal citations omitted)).

The plaintiff has also failed to state a claim for malicious prosecution upon which relief can be granted with respect to the Town of Glastonbury.

> The Supreme Court has said that a municipality may be liable for the acts of a single official—but only if that official is someone "whose edicts or acts may fairly be said to represent official policy" for the entire municipality. Monell, [436 U.S. at 694]. It is

> not enough that an official had discretion to make a
> decision that was unreviewable. <u>Anthony v. City of
> New York</u>, 339 F.3d 129, 139 (2d Cir. 2003). Rather,
> the official must have been sufficiently "high up in
> the municipal hierarchy," <u>Walker v. City of New York</u>,
> 974 F.2d 293, 297 (2d Cir. 1992), that he was
> "responsible under state law for making policy in
> that area of the municipality's business," [Jeffes v.
> Barnes,] 208 F.3d 49, 57 (2d Cir. 2000)] (emphasis
> and alteration omitted). The authority to make policy
> "necessarily" means "the authority to make <u>final</u>
> policy." <u>City of Saint Loius v. Praprotnik</u>, [485 U.S.
> 112, 127 (1988)]. Stated another way, the official
> must have had state-law "authority to adopt rules for
> the conduct of [the municipal] government." <u>Auriemma
> v. Rice</u>, 957 F.2d 397, 401 (7th Cir. 1992).

<u>Agosto v. New York City Dep't of Educ.</u>, 982 F.3d 86, 98 (2d Cir. 2020). The plaintiff does not allege any facts that could show that a municipal policymaker was involved in the prosecution on which Count 9 is based. Rather, the complaint seeks to tie the Town of Glastonbury to the arrest by means of a vague allegation with respect to Brander's state of mind when he made the arrest.

Thus, the malicious prosecution claim in Count 9 must be dismissed for failure to state a claim upon which relief can be granted.

## IV. <u>Conclusion</u>

For the reasons set forth above, the amended motion to dismiss filed by the Manchester Defendants (ECF No. 48) is hereby GRANTED. The case is dismissed with prejudice as to the Glastonbury Police Department, F. Perrone and Michael Roberts. The claims against John Johnson, Bruce D. Skehan, Peter Brander

and Neal Cavanaugh are dismissed with prejudice. The claims against the Town of Glastonbury, with the exception of Count 13, are dismissed with prejudice. Count 13 is dismissed without prejudice to the plaintiff pursuing that claim in the first-filed case, <u>John Alan Sakon v. Town of Glastonbury, et al.,</u> 3:23-cv-53-AWT.

It is so ordered.

Dated this 28th day of March 2024, at Hartford, Connecticut.

/s/AWT
_____
Alvin W. Thompson
United States District Judge
